UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JENNIFER S., | Case No. 23-CV-00547 (JWB/JFD) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| MARTIN J. O'MALLEY, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jennifer S. seeks judicial review of a final decision by the Commissioner of Social Security, who denied her application for disability insurance benefits (DIB). (Pl.'s Br. 4, Dkt. No. 11.) Plaintiff is living with diabetes, obesity, cervical degenerative disc disease, lumbar degenerative disc disease with sciatica, and bilateral knee degenerative joint disease with right knee impingement syndrome. (Soc. Sec. Admin. R. ("R.")[1] 22, 103–04, 119.) Plaintiff challenges the Commissioner's final decision, saying it was not supported by substantial evidence and specifically that the Administrative Law Judge applied her own layperson's opinion in assessing Plaintiff's ability to work. (*Id.* 13.) The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and

---

[1] The consecutively paginated Social Security administrative record is filed at docket numbers 8–88-5. The Court cites to that pagination rather than to the docket number and page assigned by the Court's CM/ECF system.

District of Minnesota Local Rule 72.1. The undersigned finds that the ALJ's decision is supported by substantial evidence and recommends denying Plaintiff's petition.

I.   BACKGROUND

   i.   *Process for Applying for Disability Benefits*

People with disabilities can qualify for financial support from the Social Security Administration (SSA) through one or both of its assistance programs: the Disability Insurance (DIB) Program under Title II of the Social Security Act and the Supplemental Security Income (SSI) Program under Title XVI of the Act. *Smith v. Berryhill*, 587 U.S. —, 139 S. Ct. 1765, 1772 (2019) (citing *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)). Plaintiff sought benefits under the first program, which is an insurance program that provides support to those who have paid sufficient social security taxes—by working and having social security taxes withheld from their pay—to qualify for coverage if they become disabled. *Id.* 42 U.S.C. § 423(a) (guaranteeing benefits for insured disabled people).[2]

To get DIB benefits, claimants submit applications to the SSA, which grants or denies them according to its own regulations. 20 C.F.R. § 404.900 (outlining DIB administrative process under Title II). SSA officials grant or deny an application at what is called the "initial determination." 20 C.F.R. § 404.900(a)(1). If a claimant is unsuccessful at their initial determination and wants the decision reviewed, they must timely file a

---

[2] The second program is a public assistance program that provides support to people with disabilities who demonstrate financial need. *Smith*, 139 S. Ct. at 1772; 42 U.S.C. § 1381a (guaranteeing support to eligible "aged, blind, or disabled" people); 20 C.F.R. § 416.110 (explaining program's purpose).

request for reconsideration. 20 C.F.R. §§ 404.900(a)(2), 404.909. If the claimant's application is denied at the reconsideration level and the claimant wants the reconsideration reviewed, they must timely request a hearing before an administrative law judge ("ALJ"). 20 C.F.R. §§ 404.900(a)(3), 404.933. The administrative law judge will consider whether the person is disabled using the five-step analysis outlined in the regulations. *See* 20 C.F.R. § 404.1520. If the claimant is unsatisfied with the ALJ's decision, they can request that a panel of members of the Appeals Council[3] review the decision. 20 C.F.R. §§ 404.900(a)(4), 404.968. If the Appeals Council grants review of the ALJ's decision, its decision on the issue becomes the final decision of the Commissioner; if the Appeals Council denies review, the ALJ's decision is the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). After obtaining a final decision, a claimant can seek review of the Commissioner's decision in federal district court in the district where they live. *Id.*; 42 U.S.C. § 405(g).

        *ii.*    ***Plaintiff's Application for Disability Insurance Benefits***

Plaintiff applied for DIB under Title II of the Social Security Act on April 27, 2020. (R. 109.) She claimed that diabetes, back problems, knee problems, a pinched nerve (and bulging disk) in her neck, as well as a sprained ankle prevented her from working. (*See* R. 96.) The SSA denied Plaintiff's initial claims for DIB and affirmed the denial on reconsideration. (R. 20, 107, 124.) Plaintiff appealed to an ALJ, who held an online hearing

---

[3] The Appeals Council is a group of judges and officers that reviews ALJ decisions. *Smith*, 139 S. Ct. at 1772.

where Plaintiff testified. (R. 20, 45, 128.) Plaintiff was represented by counsel at the hearing. (R. 20, 42.)

The ALJ's decision followed the five-step sequential analysis for Social Security disability determinations described in 20 C.F.R. § 404.1520. At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If the criteria at that step did not disqualify her from consideration for disability benefits, the ALJ proceeded to the next step. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determined that Plaintiff had not participated in substantial gainful activity[4] since November 30, 2019. (R. 22.) At step two, the ALJ found that Plaintiff had multiple severe impairments,[5] specifically diabetes mellitus, obesity, cervical degenerative disc disease, lumbar degenerative disc disease with sciatica, and bilateral knee degenerative joint disease with right knee impingement syndrome. (*Id.*) The ALJ found that Plaintiff's eczema, various acute infections and illnesses (including urinary tract infections and diverticulitis),

---

[4] If a claimant can engage in "substantial gainful activity" after their claimed onset of disability date, the SSA will find them not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i). An individual is engaged in "substantial gainful activity" if their work "involves significant physical or mental activities." 20 C.F.R. §§ 404.1572. The SSA considers an individual's earnings in determining whether their work rises to the level of "substantial gainful activity." 20 C.F.R. §§ 404.1574 ("Generally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity.").

[5] The SSA considers an impairment not severe if "it does not significantly limit [a claimant's] ability to do basic work activities," such as walking, standing, seeing, hearing, speaking, remembering, using judgment, and responding appropriately to the work environment. 20 C.F.R. §§ 404.1520(c), 404.1522. In contrast, a severe impairment must significantly limit a claimant's ability to do these activities, and the impairment must last at minimum 12 months. 20 C.F.R. §§ 404.1522, 404.1509.

hepatic steatosis, and uterine leiomyomas, were not severe because they did not limit her ability to work long term and she did not mention symptoms associated with these health issues (*Id.*) Further, because Plaintiff's adjustment disorder with anxiety did "not cause more than minimal limitation" in her ability to "perform basic mental work activities," the ALJ found it was not a severe[6] impairment either. (*Id.* 23.)

Moving to step three, the ALJ consulted the listing of impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(d).[7] The ALJ concluded that none of Plaintiff's severe conditions met or medically equaled the severity of the listed conditions. (R. 25.) The ALJ specifically consulted the listings for disorders of the skeletal spine (1.15), abnormality of a major joint in any extremity (1.18), and endocrine disorders (9.00). (R. 25.) The ALJ also consulted Social Security Rulings 14-2p and 19-2p, regarding diabetes and obesity, respectively. (*Id.*); SSR 14-2P, (2014) 2014 WL 2472008; SSR 19-

---

[6] In coming to this conclusion, the ALJ considered the four "paragraph B" functional areas used to assess disability due to mental impairment. 20 C.F.R. § 404.1520a(c)(3) (explaining that the four functional areas are "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself"). The ALJ found that Plaintiff had a no limitation in the first, second, and fourth functional areas, with a mild limitation in the third functional area. (R. 24.) For a mental impairment to be considered severe under the "paragraph B" criteria, it must cause an extreme limitation in at least one functional area, or a marked limitation in at least two functional areas. 20 C.F.R. pt. 404, subpart P, app. 1, § 12.00 (A)(2)(b).

[7] The listings are a collection of criteria that the SSA uses to determine whether a particular condition "is severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience" or, put simply, makes them disabled. 20 C.F.R. §§ 404.1525, 404.1520. There are criteria for many different conditions. *See generally* 20 C.F.R. Part 404, Subpart P, Appendix 1.

2P (2019), 2019 WL 2374244. The ALJ found that Plaintiff's symptoms were not severe enough to meet any of the listings. (R. 25.)

Next, the ALJ determined Plaintiff's residual functional capacity ("RFC"), which is a measure of the "the most [she] can still do despite [her] limitations." (R. 25–25.); 20 C.F.R. § 404.1545(a)(1); *accord Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) ("A claimant's residual functional capacity is a measurement of their ability to do sustained physical or mental work, despite their health limitations.") 20 C.F.R. § 404.1520(e) (showing that the RFC is calculated before step 4). The ALJ made the following findings:

> [T]he claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a), as follows. Specifically, the claimant is able to lift up to ten pounds occasionally. She is able to stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks. She is unable to climb ladders/ropes/ scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She is unable to tolerate exposure to unprotected heights and use of dangerous moving machinery.

In determining Plaintiff's residual functional capacity, the ALJ found that Plaintiff's conditions (called "medically determinable impairments") could reasonably cause the symptoms she alleges prevent her from working. (R. 26.) However, the ALJ also found that the "intensity, persistence, and limiting effects" of Plaintiff's stated symptoms were "not entirely consistent" with the evidence in her record. (R. 26.) At her hearing, Plaintiff testified that she could not stand longer than 15 minutes and could not sit longer than 30 to 60 minutes at a time. (*Id.*) She reported "unpredictable episodes of fecal incontinence, at least once a week." (*Id.*) After reviewing the record, the ALJ found that significant limitations were warranted in Plaintiff's RFC, but that the "medical and other evidence is

not entirely consistent with the claimant's asserted difficulties and instead indicates she is capable of working within the specified restrictions." (*Id.* at 27.) Specifically, the ALJ pointed to plaintiff's radiology reports, electromyography tests, physical exams, conservative course of treatment, improvement in her fecal incontinence symptoms[8], and ability to do various activities (e.g., caregiving for her husband before his death, doing dishes, laundry, vacuuming, cleaning, running errands, making phone calls, filling out paperwork, cooking, caring for pets, etc.) to support her RFC. (*Id.* 27–29.)

In rendering the RFC, the ALJ considered the medical opinion of the consultative examiner, Dr. Jankus, as well as the prior administrative medical findings made by two state examiners but found none of the opinions totally persuasive. (R. 29–30.) The ALJ found that Dr. Jankus's assessment—that Plaintiff could work up to 60% of the day on her feet, punctuated by periods of sitting—was "somewhat unsupported" because it ignored his own finding that Plaintiff was obese and had a reduced range of motion in her back and knees. (R. 29–30, 101–102 (summarizing exam).) The ALJ also found the opinion inconsistent with the record because "later MRI findings and updated clinical exams support considerably greater limitations with respect to standing/walking and postural activities." (*Id.*) The state examiners[9] opined that Plaintiff could manage "medium

---

[8] For example, at her more recent doctor's visits, Plaintiff reported having "only one occurrence of diarrhea per week with 'typically' no fecal incontinence." (R. 28.) This was promising news for the ALJ because although Plaintiff believed that she was fired from her last job for spending too much time in the bathroom, her improvement and course of treatment suggested the condition would not impermissibly interfere with her work. (*Id.*)

[9] The Social Security Act requires state, not federal, agencies to initially evaluate a claimant's eligibility for social security benefits. 42 U.S.C. § 421(a)(1); *see also* 20 C.F.R.

exertion" at work, but the ALJ was skeptical. (R. 30.) While their claim was supported by their citations, the ALJ did not find it consistent with the remainder of the record evidence. (*Id.*) She noted that the examiners did not consider the fact that Plaintiff had multiple impairments (obesity, lumbar and cervical spine disease, arthritis in her right knee, diabetes, and the side effects from her diabetes medications) and that they did not place them in the context of Plaintiff's treatment history. (*Id.*)

After evaluating the record and determining Plaintiff's residual functional capacity, the ALJ moved on to step four where she found that Plaintiff could do her past relevant work despite her limitations. (R. 30.); *see* 20 C.F.R. § 404.1520(f). Plaintiff had prior work experience as a telemarketer, customer service representative, and appointment clerk. (R. 30.) Because the ALJ decided Plaintiff could do her relevant past work, she concluded that Plaintiff was not disabled. (R. 21, 30.) The ALJ reported that the vocational expert testified that there were other jobs that the Plaintiff could do in the national economy, such as document preparer, addressing clerk, and order clerk, which further supported the ALJ's conclusion that Plaintiff was not disabled. (R. 31–32.)

Plaintiff appealed the ALJ's ruling to the SSA's Appeals Council. (R. 255–56.) She argued that the ALJ's ruling was not supported by substantial evidence. (R. 226.) The

---

§§ 404.1503, 404.1613, 404.1615 (explaining the division of labor between the states and the SSA); William R. Morton, Cong. Rsch. Serv., R44948, *Social Security Disability Insurance and Supplemental Security Income: Eligibility, Benefits, and Financing* 39–40 (2018) (explaining the initial determination process). Minnesota Disability Determination Services, an agency within the Minnesota Department of Employment and Economic Development, uses SSA guidelines to evaluate social security claims arising in Minnesota. Disability Determination Services, MN Employment and Economic Development, https://mn.gov/deed/programs-services/dds/ (last visited Jan. 16, 2024).

Appeals Council denied her request for review. (R. 9.) This denial made the ALJ's decision the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 106 (2000); *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

### iii. *Judicial Review of the ALJ's Decision in Plaintiff's Case*

Plaintiff filed a complaint in United States District Court and the Commissioner filed his answer and the administrative record. (Dkt. Nos. 1, 8.) The case is before this Court on the parties' briefs; the undersigned did not entertain oral argument. (*See* Dkt. Nos. 11, 13.)

## II. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited. The district court "reverses the findings of the Commissioner only if they are unsupported by substantial evidence or result from an error of law." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citing 42 U.S.C. § 405(g)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions

is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden of proving disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

Plaintiff is insured for DIB purposes through June 30, 2024 (R. 21.) so she has the burden of establishing that she became disabled on or before that date. *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998). The relevant time period for the Court to consider is from November 30, 2019 (the alleged disability onset date) to the present. (R. 21, 96)

### III.   The ALJ's RFC Determination Was Not Based "Wholly" on Lay Opinion and Was Supported by Substantial Evidence.

Plaintiff argues that after the ALJ found the opinions of the consultative examiner and state examiners unpersuasive, she erred by writing an RFC "based wholly on her own interpretation of the medical evidence." (Pl.'s Br. 12.) Plaintiff says the ALJ should have further developed the record with the input of an additional medical doctor, rather than crafting an RFC determination based on her own "lay interpretation of the MRIs and examination findings and the impact they have on Plaintiff's functional abilities." (*Id.* 14–

15.) If the ALJ had sought such medical advice, the advice could have shown that Plaintiff needed extra breaks in her workday, even just once a week, which would exclude her from competitive employment, according to the vocation examiner who testified at her hearing. (*Id.* at 14–15.) If this occurred, Plaintiff would have been found to be disabled, and therefore the ALJ's failure to develop the record could not be harmless error. (*Id.*)

The Commissioner responds that the RFC—which was *more* restrictive than the assessments of the doctors[10] consulted—was not based on the ALJ's lay opinion, but on her review of the record, which included Plaintiff's exams, tests, "conservative course of treatment," and activities. (Cmm'r's Br. 6.) Taking this evidence together and resolving all doubts in Plaintiff's favor, the ALJ crafted an RFC that was supported by substantial evidence. (*Id.* ("Contrary to Plaintiff's assertion, the ALJ did not need a medical opinion to precisely match her RFC finding.")) The Commissioner is correct.

The RFC is an *administrative* determination reserved for the Commissioner, but it answers a *medical* question: What is the most that a claimant can do considering their limitations? *Lawrence v. Saul*, 970 F.3d 989 (8th Cir. 2020); *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) The Commissioner's answer to this question must be "supported by some medical evidence of [the] claimant's ability to function in the workplace." *Koch v. Kijakazi*, 4 F.4th 656, 667 (8th Cir. 2021); 20 C.F.R. § 404.1545. That does not mean that

---

[10] The two state examiners found Plaintiff could do medium work, as well as sedentary and light work. (R. 104, 120); 20 C.F.R. § 404.1567(c)("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.")

the RFC must "be supported by a specific medical opinion." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (quoting *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016)). It does mean that ALJ cannot "simply draw [her] own inferences about plaintiff's functional ability from medical reports." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, at 1070 (8th Cir. 2004)) (quoted with approval in *Koch*, 4 F.4th at 667).

The RFC is based on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations" *Schmitt v. Kijakazi*, 27 F.4th 1353 (8th Cir. 2022) (citing 20 C.F.R. § 404.1545(a)(1)). The claimant is responsible for providing evidence of their functional capacity, but it is the Social Security Administrations' duty to develop the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports" from their medical sources. 20 C.F.R. § 404.1545. If an ALJ has a sufficient basis to determine a Plaintiff's RFC, they need not order more examinations. *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019) (citing *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995).

In this case, the ALJ found that she had enough evidence in the record to make the relevant findings of fact. (R. 20.) Just because the ALJ did not find any of the medical opinions in the record to be persuasive in their entirety does not mean that "the ALJ's RFC is based *wholly* on her interpretation of the medical evidence." (Pl.'s Br. 12 (emphasis added).) The ALJ properly based her RFC determination on other evidence, even setting

aside the radiology reports[11] that Plaintiff alleges the ALJ could not interpret. *Hensley*, 829 F.3d at 932 ("In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's [RFC] findings.'") (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)).

The ALJ noted that Plaintiff's electromyography tests were normal in 2015, 2020, and 2021, despite Plaintiff's complaints of parathesis in her left arm. (R. 674; *see also* R. 72; R. 726–27 (recommending neurology consult when no orthopedic source found in October 2020).) Typically, the ALJ recounted, the results of Plaintiff's physical exams showed normal sensory and motor function, albeit with intermittently limited range of motion and, lately, a limp. (R. 512 (noting limited range of motion in neck in May 2020); R. 593–94 (noting full range of motion in neck, limited range of motion in knees and back, unremarkable gait at normal pace, with no difficulty sitting at consultative exam in October

---

[11] Plaintiff specifically cites an error in the ALJ's opinion where the ALJ "failed to even acknowledge" the findings of an MRI taken in January 2021. (Pl.'s Br. 12 (citing R. 650 (January 2021 cervical spine MRI).) The ALJ did note that updated imagery of Plaintiff's cervical spine was available, but erroneously recounted the findings as "mild or 'tiny,'" which were the descriptors used in Plaintiff's findings from an MRI in June 2016, years before the alleged onset of Plaintiff's disability. (*Id.* (citing R. 27).). The Commissioner responds with a reminder that courts must review the record in the light most favorable to the ALJ's decision and noting that the 2021 cervical spine MRI is "not inconsistent with the RFC of sedentary work, and it does not undermine the substantial evidence that supported the ALJ's" decision about Plaintiff's RFC. (Cmm'r's Br. 14.) The Court agrees. While the Court acknowledges that the ALJ mistakenly recited the findings of the 2016 cervical spine MRI (R. 1055) instead of the 2021 cervical spine MRI (R. 650 (results), 816 (progress note)), Plaintiff does not show how this error makes the RFC unsupported by substantial evidence, given the other non-radiological findings the ALJ had before her.

2020); R. 846 (noting antalgic gait in June 2021); R. 911 (finding same in July 2021, but with full range of motion in hip and knee); R. 1015 (observing full strength in hip and knee despite knee pain).). She noted Plaintiff's conservative course of treatment, despite having visited several specialists. (R. 862 (consulted neurology, recommendation was retrial of prescription medication); R. 1015 (consulted sports medicine, recommendation was physical therapy and a brace).)

The ALJ also observed that Plaintiff's record showed great improvement in Plaintiff's fecal incontinence problems. (R. 591 (reporting "frequent diarrhea issues" with fecal incontinence anywhere from 1 to 4 times a week at October 2020 consultative exam); R. 816 ("[As of June 2021 h]er diarrhea has improved to only once a week . . . and she typically does not have any fecal incontinence."); R. 946 (reporting "some loose stools" in October 2021); *see also* R. 512 ("intermittent diarrhea" in May 2020); R. 910 (reporting no problems controlling bowels in July 2021).)

Finally, the ALJ noted the plaintiff's various activities that included household chores, shopping, and caring for her ailing husband until his death. (R 29 ("Even if done through difficulty and/or on her own timeframe, these activities reflect the claimant's retention of substantial work-related abilities despite her impairments, such as with respect to performing tasks while sitting or standing, moving about (at least within a confined area), and using her hands.").) In sum, the ALJ pointed to specific record evidence—written and provided by healthcare providers—to support her RFC recommending sedentary work and did not rely on a layperson's interpretation of the medical evidence alone. She found the RFCs proposed by the state examiners to be overconfident and

14

modified her own RFC to be more favorable to Plaintiff after reviewing the updated record. Even with this more restrictive RFC, Plaintiff can still do her old jobs, or other sedentary jobs that exist in the national economy.

### IV.   Conclusion

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's complaint be **DISMISSED** with prejudice.

Date: January 16, 2024              *s/ John F. Docherty*
                                    JOHN F. DOCHERTY
                                    United States Magistrate Judge

**NOTICE**
**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.
A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).